COMMONWEALTH of Pennsylvania, Appellee,

v.

Travis Alan LEHMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 12, 2004.

Filed May 28, 2004.

Kristin L. Rice, Gettysburg, for appellant.

Brian T. Coffey, Asst. Dist. Atty., Gettysburg, for Com., appellee.

Before: HUDOCK, MONTEMURO * and CAVANAUGH, JJ.

CAVANAUGH, J.

¶ 1 This appeal is from a judgment of sentence imposed after revocation of probation. Appellant challenges the admissibility of evidence obtained during a random urinalysis test. The test was administered pursuant to the standard rules of the intermediate punishment program (I.P.P.) under which appellant had been sentenced. Appellant argues that the results of the urine test and a subsequent statement made by him concerning drug usage should have been suppressed because his probation officer did not have any suspicion that he had violated a condition of his probation. We affirm.

¶ 2 The factual and procedural background, as supported by the record, was recounted by the lower court as follows:

On September 7, 2000, Lehman entered a guilty plea to Recklessly Endangering, 18 Pa.C.S.A. § 2705 (Misdemeanor 2), in CC–318–00 and to a first offense D.U.I., 75 Pa.C.S.A. § 3731(a)(1) (Misdemeanor 2), in CC–319–00. Both incidents occurred on February 20, 2000. On October 17, 2000, Lehman was sentenced on both cases pursuant to a plea

agreement. In CC–319–00 Lehman was sentenced to 24 months of intermediate punishment (hereinafter referred to as "I.P.P.") with 60 days Phase I, 90 days Phase II, and the balance in Phases III–V. He was to report to prison to begin the Phase I portion of the sentence on October 23, 2000. In CC–318–00 he was sentenced to 24 months I.P.P. with all of the sentence being served in Phases III–V. This sentence was to be served consecutive to the sentence in CC–319–00. After sentencing on that same date, Lehman signed the Standard Rules of I.P.P. in both cases.

On April 23, 2002, while in Phase IV of his I.P.P. sentence, Lehman submitted a urine test upon request of a probation officer. Lehman's urine tested positive for cocaine, and he was placed under arrest. While being placed under arrest, Lehman admitted that he had used marijuana and cocaine in violation of Condition 1(a) of the program. As a result, a revocation petition was filed alleging the 1(a) violation as well as violations of conditions 4(c) (becoming unemployed and not notifying the Probation Office); 4(b) (being terminated from his employment for cause on March 29, 2002); and 3(e) (failing to notify the Probation Office of his release from prison within 24 hours of posting bail).

A revocation hearing commenced on May 10, 2002. At that time, Lehman orally moved to suppress the results of the urine test conducted on April 23, 2002 as well as his admission that he used marijuana and cocaine while in Phase IV of his I.P.P. sentence. Counsel were directed to submit a written stipulation as to the factual circumstances surrounding Lehman's produc-

* Retired Justice assigned to the Superior Court.

tion of the urine sample. Testimony was received on the other alleged violations and disposition deferred.

Lower court opinion, filed March 12, 2003, at 1–2 (footnote omitted).

¶ 3 The appellant signed the following statement on October 17, 2000, at the time he was sentenced to I.P.P.:

All Intermediate Punishment Programs are subject to random urinalysis testing and curfew checks in which you must comply with. Your future conduct will be governed by the rules and conditions which follow these general instructions.

¶ 4 On appeal, Lehman argues that despite his acceptance of the conditions of I.P.P., a warrantless search by a probation officer of an offender is unconstitutional and the fruits of such a search are subject to exclusion from evidence at a violation of probation hearing.

■■■ ¶ 5 The United States Supreme Court has held that the exclusionary rule for evidence obtained in violation of the Fourth Amendment to the U.S. Constitution does not extend to state parole revocation hearings. *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). Since the constitutional rights of a parolee are indistinguishable from those of a probationer, *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1035 n. 7 (1997), under federal law, the lower court committed no error in denying the suppression motion at the violation of probation hearing.

■■■ ¶ 6 The issue presented, thus, is whether evidence obtained in violation of either the federal or state constitutions, is excludable from probation violation hearings as a matter of state constitutional law. We see no basis upon which to extend greater protection under Article I, Section 8 of the Pennsylvania Constitution than exists pursuant to the federal constitution.

■■■ ¶ 7 Although there are instances where Article I, Section 8 mandates greater protection of privacy interests than does the Fourth Amendment, *see Theodore v. Delaware Valley School District*, 575 Pa. 321, 836 A.2d 76, 88–96 (2003) (analyzing suspicionless searches of lockers of high school students pursuant to Article I, Section 8), in the context of probation violation hearings and application of the exclusionary rule, we hold that the state constitution affords no greater protection than does the federal constitution.

¶ 8 Mindful of our role as an intermediate appellate court, we would be exceeding our authority to apply the law as determined by our state supreme court were we to require use of the exclusionary rule in the context of probation violation hearings. Appellate courts of other states have declined to apply the exclusionary rule to probation violation hearings pursuant to their state constitutions. *See e.g. Connecticut v. Foster*, 258 Conn. 501, 782 A.2d 98 (2001); *Minnesota v. Martin*, 595 N.W.2d 214 (Minn.App.1999). We believe that absent direction from our supreme court to the contrary, no deviation from the approach of the U.S. Supreme Court in *Scott, supra*, is warranted.

¶ 9 We find that the lower court committed no error in declining to apply the exclusionary rule at the probation revocation hearing. The evidence obtained as a result of the urinalysis, as well as appellant's statement pertaining to drug use, were not subject to exclusion, therefore, assuming *arguendo* an improper search, no error was committed by their admission into evidence.

¶ 10 Judgment of sentence affirmed.